**[J-91-2024] [MO: Donohue, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| JARRETT COLEMAN, | : | No. 33 MAP 2024 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 1416 |
| | : | CD 2022 dated November 8, 2023, |
| v. | : | Affirming and Reversing the Order of |
| | : | the Lehigh County Court of Common |
| | : | Pleas, Civil Division, at No. 2021 C- |
| PARKLAND SCHOOL DISTRICT, | : | 2666 dated November 17, 2022. |
| | : | |
| Appellant | : | ARGUED:  November 20, 2024 |

**DISSENTING OPINION**

**JUSTICE WECHT**                                    **DECIDED:  November 24, 2025**

"Publicity is justly commended as a remedy for social and industrial diseases. Sunlight is said to be the best of disinfectants; electric light the most efficient policeman."[1] This case brings to the fore a question regarding what Pennsylvania's "Sunshine Act"[2] requires in order to ensure that sufficient light is cast upon the proceedings of the

---

[1]     Louis Brandeis, OTHER PEOPLE'S MONEY 62 (Nat'l Home Library Foundation ed. 1933).  Some believe that Justice Brandeis' aphorism drew inspiration from British jurist and diplomat James Bryce, who wrote that "[p]ublic opinion is a sort of atmosphere, fresh, keen, and full of sunlight, . . . and this sunlight kills many of those noxious germs which are hatched where politicians congregate."  James Bryce, 3 THE AMERICAN COMMONWEALTH 157 (Macmillan & Co. 1888); see, e.g., Alasdair S. Roberts, "Where Brandeis got 'sunlight is the best disinfectant'" (available at https://alasdairroberts.ca/2015/03/01/where-brandeis-got-sunlight-is-the-best-disinfectant/).

[2]     See Act of Oct. 15, P.L. 729, No. 93, codified as amended, 65 Pa.C.S. §§ 701-716.

agencies it covers.[3]  The Act requires that covered agencies take a number of steps in service of transparency.  Among these is the requirement that agencies not only provide advance notice of every scheduled meeting but also include with that notice an agenda detailing the business to be conducted at the meeting.[4]  Failure to include an item of business on the agenda generally precludes action upon that business at the announced meeting.  The General Assembly has provided several exceptions to this rule,[5] but none of them apply to the challenged action here at issue—a school board's approval of a collective bargaining agreement without advance public notice.

The General Assembly has declared its rationale in promulgating the Sunshine Act:

### § 702. Legislative findings and declaration

**(a) Findings**.—The General Assembly finds that the right of the public to be present at all meetings of agencies and to witness the deliberation, policy formulation and decisionmaking of agencies is vital to the enhancement and proper functioning of the democratic process and that secrecy in public affairs undermines the faith of the public in government and the public's effectiveness in fulfilling its role in a democratic society.

**(b) Declarations**.—The General Assembly hereby declares it to be the public policy of this Commonwealth to insure the right of its citizens to have notice of and the right to attend all meetings of agencies at which any agency business is discussed or acted upon as provided in this chapter.[6]

Since its advent in 1998, the Sunshine Act has prescribed various actions related to notice of agency meetings.  Until 2021, Section 709 of the Act required only advance

---

[3]     The Sunshine Act's definition of agency is broad, and it includes any "school authority" or "school board."  65 Pa.C.S. § 703.

[4]     *See id*. § 709(c.1).

[5]     *See id*. § 712.1.

[6]     *Id*. § 702.

notice of the *fact* that a meeting was scheduled to occur and where and when it would happen. The onus was upon residents either to ferret out information concerning what would be covered during the meeting or simply to attend and find out. In 2021, however, the General Assembly added Subsection 709(c.1),[7] which requires publication by various means of an "agenda," which must include "a listing of each matter of agency business that will be or may be the subject of deliberation or official action at the meeting."[8] Now, residents were to be informed in advance of what would be covered so that they could more readily make an informed choice whether the business of the meeting involved a matter that concerned them.

That same 2021 amendment added an entire section concerning the effect of the publication of any agenda on the permissible actions of the agency. It is this section—its requirements and exceptions—that is at issue in today's appeal. Since 2021, new Section 712.1 has provided as follows:

> **(a) Official action.**—Except as provided in subsection (b), (c), (d) or (e), an agency may not take official action on a matter of agency business at a meeting if the matter was not included in the notification required under section 709(c.1) (relating to public notice).
>
> **(b) Emergency business.**—An agency may take official action at a regularly scheduled meeting or an emergency meeting on a matter of agency business relating to a real or potential emergency involving a clear and present danger to life or property regardless of whether public notice was given for the meeting.

---

[7]     *See* Act of June 30, 2021, P.L. 350, No. 65, § 1.

[8]     *See generally* 65 Pa.C.S. § 709(c.1)(1). The quoted language appears in each subsection under Subsection 709(c.1)(1). These subsections prescribe internet-based and physical notice, as well as the provision of a copy of the agenda to meeting attendees.

**(c) Business arising within 24 hours before meeting.—**An agency may take official action on a matter of agency business that is not listed on a meeting agenda if:

(1) the matter arises or is brought to the attention of the agency within the 24-hour period prior to the meeting; and

(2) the matter is *de minimis* in nature and does not involve the expenditure of funds or entering into a contract or agreement by the agency.

**(d) Business arising during meeting.—**If, during the conduct of a meeting, a resident or taxpayer brings a matter of agency business that is not listed on the meeting agenda to the attention of the agency, the agency may take official action to refer the matter to staff, if applicable, for the purpose of researching the matter for inclusion on the agenda of a future meeting, or, if the matter is *de minimis* in nature and does not involve the expenditure of funds or entering into a contract or agreement, the agency may take official action on the matter.

**(e) Changes to agenda.—**

(1) Upon majority vote of the individuals present and voting during the conduct of a meeting, an agency may add a matter of agency business to the agenda. The reasons for the changes to the agenda shall be announced at the meeting before any vote is conducted to make the changes to the agenda. The agency may subsequently take official action on the matter added to the agenda. The agency shall post the amended agenda on the agency's publicly accessible Internet website, if available, and at the agency's principal office location no later than the first business day following the meeting at which the agenda was changed.

(2) This subsection shall not apply to a conference or a working session under section 707 (relating to exceptions to open meetings) or an executive session under section 708 (relating to executive sessions).

**(f) Minutes.—**If action is taken upon a matter of agency business added to the agenda under this section, the minutes of the meeting shall reflect the substance of the matter added, the vote on the addition and the announced reasons for the addition.[9]

---

[9]    *Id*. § 712.1.

The issue before us implicates the meaning of Section 712.1 of the Sunshine Act. As this is a question of law, we review it *de novo*:[10]

> The object of all statutory interpretation is to ascertain and effectuate the intention of the General Assembly, giving effect, if possible, to all provisions of the statute. In general, the best indication of legislative intent is the plain language of a statute. When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. Words of the statute are to be construed according to their common and approved usage.[11]

In interpreting the plain language of the Sunshine Act, we must "constru[e] various sections in conjunction with and by reference to one another."[12]

"When the words of a statute are not explicit, the intention of the General Assembly may be ascertained by considering" various extra-textual considerations, which may inform our understanding of the intention of the legislature.[13] Among these are "[t]he occasion and necessity for the statute"; "[t]he mischief to be remedied" and "object to be obtained"; and "the consequence of a particular interpretation."[14]

A statute is ambiguous when, read in its full context, it is susceptible to two reasonable readings.[15] We have recognized a broader import to the meaning of "not explicit" than mere ambiguity:

> Usage of [the tools of statutory construction] is proper when statutory language is "not explicit." 1 Pa.C.S. § 1921(c). Although this Court has often described such a circumstance as suggesting the existence of two

---

[10]   *See Bowling v. Office of Open Records*, 75 A.3d 453, 466 (Pa. 2013).

[11]   *Sivick v. State Ethics Comm'n*, 238 A.3d 1250, 1259 (Pa. 2020).

[12]   *Harrisburg v. Prince*, 219 A.3d 602, 610 (Pa. 2019) (citing 1 Pa.C.S. § 1922(2)).

[13]   1 Pa.C.S. § 1921(c).

[14]   *Id*.

[15]   *Snyder Bros. v. Pa. Pub. Util. Comm'n*, 198 A.3d 1056, 1073 (Pa. 2018).

reasonable interpretations, the "not explicit" prerequisite logically applies where . . . *any* reading of the statute's plain text raises non-trivial interpretive difficulties.[16]

At first blush, it seems reasonable, in light of the use of "or" in Subsection 712.1(a), to interpret that section as setting forth four discrete exceptions to the agenda notice requirement of Subsection 709(c.1). The trial court did so, and today's Majority agrees. But this neglects to account for the entirety of Section 712.1 (to say nothing of closely related Subsection 709(c.1)). And it departs from the bedrock principle that we should not interpret a statute in a fashion that renders provisions of it ineffective or redundant.[17] One need not look outside Section 712.1 to identify the problems, because there alone, on the four-exception account, several textual anomalies come into view.

First and foremost, on this reading, Subsections (b), (c), and (d) and the narrow notice exceptions they describe become, for all intents and purposes, unnecessary. In any of the scenarios described in Subsections (b), (c), and (d), the agency is just as capable of invoking the *carte blanche* authority to take up any unannounced item of business putatively conferred by Subsection (e). If Subsection (e) is a standalone exception, then there is no scenario in which Subsection (b), (c), or (d) would apply while Subsection (e) could not.

---

[16] *McGrath v. Bureau of Prof'l & Occupational Affairs, State Bd. of Nursing*, 173 A.3d 656, 662 n.8 (Pa. 2017) (citation omitted, emphasis in original).

[17] *See* 1 Pa.C.S. § 1921(a) ("Every statute shall be construed, if possible, to give effect to all its provisions."); *Jackiw v. Soft Pretzel Franchise*, 329 A.3d 1152, 1156 (Pa. 2025) ("[I]nterpreting language as mere surplusage is disfavored."); *Reibenstein v. Barax*, 286 A.3d 222, 230 (Pa. 2022) ("We can no more interpret a statute in a way that adds language than we can read it in a way that renders any statutory language ineffective.").

The Majority's principal effort to give discrete effect to Subsections (b), (c), and (d), despite their apparent subsumption by Subsection (e), is to focus upon the preliminary vote requirement. The Majority posits that, on the four-exception account, only Subsection (e) requires a preliminary vote to authorize consideration of, and a final vote upon, an unnoticed item of business that does not fit Subsection (b), (c), or (d).[18] The Majority takes the view that this conveys to the agency the gravity of its invocation of a Sunshine-eclipsing exception and increases agency accountability.[19] But there is no reason to believe that the preliminary vote requirement will do anything to slow down an agency that has a majority to do the unnoticed business in the first place. Indeed, it is absurd to imagine that an agency motivated to use Subsection (e) will hesitate, and reverse course, merely because it must vote *twice* to do so. The majority in favor of acting without notice is no more accountable for having to summon a preliminary majority to act than it would have been after the same majority took final action.

There are other problems, one of which centers on the Section's use of the word "agenda," and another of which concerns the matters to be recorded in the meeting minutes. On the former point, we take note of the absence of the word "agenda" from Subsections (b), (c), and (d). On the Majority's account, while any invocation of Subsection (e) (as a putative standalone exception) must be formally added to an amended agenda, the same would not be true for business undertaken pursuant to

---

[18]     *See* Maj. Op. at 22.

[19]     *Id*. at 24 ("In that way, Section 712.1 both reinforces the importance of the 24-hour Notice Rule and provides for accountability through transparency when the rule is circumvented by that exception.").

Subsections (b), (c), or (d).[20]  This, too, the Majority identifies as enhancing accountability just for Subsection (e) actions,[21] implying that the legislature did not intend for the agency to be held similarly accountable to residents for the invocation of any of the Subsection (b), (c), or (d) exceptions.

The problems don't end there.  Subsection (f) addresses what happens with respect to items added to an agenda, allegedly comprising only items added via Subsection (e), but not to items excepted under Subsections (b), (c), or (d).  Thus, Subsection (f) requires that the minutes reflect business conducted regarding an item added to the agenda during the meeting with more detail than required by the Sunshine Act's general Section 706(3) minutes requirement.[22]  On the Majority's account, the minutes described for the recordation of an invocation of Subsection (e) further enhance accountability relative to Subsection (e) actions.  Here, too, the question arises why the legislature would not have intended similar accountability for the invocation of Subsections (b), (c), and (d).

Setting aside the questionable increase in accountability allegedly wrought by the requirement of more carefully specified minutes, to read Subsection (f) as working in tandem only with Subsection (e) runs headlong into a plain-text problem.  Subsection (f)

---

[20]    *See Mimi Investors, LLC v. Tufano*, 297 A.3d 1272, 1286 n.21 (Pa. 2023) ("[W]hile we primarily focus on what a statute says, it may at times be equally important to recognize what a statute does not say.").

[21]    *See* Maj. Op. at 22-23.

[22]    Section 706 requires inclusion in the minutes of "[t]he substance of all official actions."  65 Pa.C.S. § 706(3).  Subsection 712.1(f) requires that, for "a matter of agency business added to the agenda under this section," the minutes "shall reflect the substance of the matter added, the vote on the addition and the announced reasons for the addition."

reads in relevant part: "If action is taken upon a matter of agency business added to the agenda *under this section*, the minutes of the meeting shall reflect the substance of the matter added . . . ."[23]  The only way to get from that text to the proposition that Subsection (f) applies only to Subsection (e) is to give primacy to the mention of agenda and use it simply to replace "this section" with "Subsection (e)."

In short, reading "or" strictly to establish four discrete exceptions to the notice requirement leads logically to the following counterintuitive conclusions:

(1) Subsection (e) provides a standalone exception to the notice requirement, but brings with it the equally textually rooted consequence that

(2) only invocations of Subsection (e), but not of other exceptions, must be added to the agenda, hence

(3) only adding items pursuant to Subsection (e) need be recorded with specificity in the minutes, which requires

(4) rewriting the minutes requirement in Subsection (f), which speaks explicitly in terms of the entire "section," to function as though it read "Subsection (e)."

It is, to say the very least, reasonable to avoid this reading by positing that Subsection (f) applies, as it states, to the entirety of "this section," *i.e.*, Section 712.1, with the logically attendant conclusion that Subsection (e) does so as well.  That is to say, both Subsections (e) and (f) are procedural in nature, requiring as to *any* invocation of a notice exception that the agency make explicit *post hoc* amendments to the agenda, provide detailed recordation of the action in the minutes, and post the amended agenda as specified in Subsection 712.1(e)(1).  This reading leaves Subsections (b), (c), and (d) to

---

23      *Id*. § 712.1(f) (emphasis added).

serve as the substantive exceptions, because delineating narrow exceptions is their only function.

My account does no more violence to the word "or" than the four-exception account does to the words "this section." Neither account being ideal, both arguably are reasonable. It is thus fair to say that Section 712.1 is less than "explicit" in the *McGrath* sense.[24] Support for the four-exception reading relies upon a strict reading of the word "or," consequences notwithstanding. Support for the three-exception reading, conversely, is found first in the titles of the subsections. Each of Subsection (b), (c), and (d) features the word "business" in its title, while Subsection (e) conspicuously does not.[25] Furthermore, only Subsections (e) and (f) speak to procedural matters at all. It stands to reason that the General Assembly intended to provide a method for invoking the exceptions, whatever their number—a procedure that requires a majority vote for *any* effort to act outside the scope of a timely, published agenda. This reading has the crucial benefit of giving clear effect to all of the provisions of the statute, avoiding redundancy, and remaining sensitive to the distinct grammar and content of, on the one hand, Subsections (b), (c), and (d) and, on the other, Subsections (e) and (f). Conversely, to read Subsection (e) as a standalone exception like those stated in Subsections (b), (c), and (d), is to render the latter three subsections of little or no practical effect. Such a

---

[24] *See McGrath*, 173 A.3d at 662 n.8 (observing that language is "not explicit" when we face "non-trivial interpretive difficulties").

[25] Subsection (b) concerns "[e]mergency business," Subsection (c) refers to "[b]usiness arising within 24 hours before meeting," and Subsection (d) refers to "[b]usiness arising during a meeting." Subsection (e), conversely, refers to "Changes to agenda" and Subsection (f) simply to "minutes." *See* 1 Pa.C.S. § 1924 ("The headings prefixed to titles, parts, articles, chapters, sections and other divisions of a state shall not be considered to control but may be used in the construction thereof.").

reading leads to the conclusion that a governing body can pursue any unnoticed business it wants for no better reason than that a majority of that body feels like it. It also results in little accountability regarding invocations of Subsections (b), (c), and (d), which, on the four-exception account, need not be made part of the agenda nor spelled out with any detail in the minutes.

With an eye toward the mischief to be remedied, the four-exception account is incompatible with the thrust and intention of the Sunshine Act—and especially that of the 2021 Amendments. Those amendments explicitly provided for notice of the business to be discussed at a meeting by the provision of an agenda identifying such business. New Section 712.1 delineated clear, narrow exceptions to the agenda notice requirements. The most obvious inference, reading that section as a whole and in light of Subsection 709(c.1), is that no non-emergent matter of immediate or lasting consequence, especially fiscal, may be taken up by an agency without *advance* notice to the public of the agency's intention to do so.

Properly understood, the statute requires that an agency wishing to take up business at a meeting that was not announced in the agenda published at least twenty-four hours in advance of the meeting may do so only as to matters that satisfy one of Subsections 712.1(b), (c), or (d). The agency must do so by a majority vote of its members who are present and voting, consistent with Subsection 712.1(e). If they do so, the minutes of the meeting must "reflect the substance of the matter added, the vote on the addition and the announced reasons for the addition," as prescribed by Section 712.1(f). Because the School District in this case voted to add an agenda item

that patently and indisputably did not satisfy any of the statutory exceptions to the notice requirement, it violated the Sunshine Act.

For the foregoing reasons, I would affirm the Commonwealth Court's order.[26] Thus, I respectfully dissent.

Justice McCaffery joins this dissenting opinion.

---

[26] I agree with the Commonwealth Court's determination that the School District successfully ratified its initially improper approval of the collective bargaining agreement, *see Coleman v. Parkland Sch. Dist.*, 305 A.3d 238, 249-50 (Pa. Cmwlth. 2023), a matter the Majority has no need to address given its ruling.